T.C. Memo. 2014-162

UNITED STATES TAX COURT

GREGORY SCOTT SAVOY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12316-12L.                    Filed August 12, 2014.

        P has a serious and sometimes disabling illness, and did not
timely file a return for the 2007 tax year.  R prepared a substitute for
return pursuant to I.R.C. sec. 6020(b), issued a notice of deficiency,
and assessed the tax.  Thereafter, R issued P a notice of proposed
levy.  After an initial administrative hearing, R issued a notice of
determination <u>not</u> to sustain the levy for the 2007 tax year.  The
notice of determination placed P in "currently not collectible" status
and stated that R would file a notice of lien to protect its interests as
creditor.  P timely petitioned the Tax Court to review the initial notice
of determination.  Before trial, R moved to remand the case because it
acknowledged that Appeals had failed to give proper weight to P's
illness in not allowing him sufficient time to prepare and file the
delinquent returns to determine his correct tax liability for 2007.  The
Court granted R's motion to remand over P's objection, and R
conducted a supplemental CDP hearing.  After the supplemental
hearing, R issued a supplemental notice of determination, which
again did not sustain R's levy and again placed P in "currently not

**[\*2]** collectible" status, but did <u>not</u> state that the IRS would file a notice of lien.  P objects to this supplemental notice of determination.

>    <u>Held</u>:  Appeals properly considered the issues P raised during his CDP hearing when issuing its supplemental notice of determination.

>    <u>Held</u>, <u>further</u>, Appeals did not abuse its discretion in deciding (a) not to sustain the decision of the IRS to issue a levy for the 2007 tax year, (b) to place P in "currently not collectible" status, and (c) to forgo filing a notice of Federal tax lien.

Gregory Scott Savoy, for himself.

<u>James G. Hartford</u>, for respondent.


MEMORANDUM OPINION


GUSTAFSON, <u>Judge</u>:  This collection due process ("CDP") case brought under section 6330(d)(1)[1] is before the Court on cross-motions for summary judgment filed by respondent, the Commissioner of the Internal Revenue Service ("IRS"), and petitioner, Gregory Scott Savoy.  The only issues for decision are: (1) whether the IRS Office of Appeals ("Appeals") properly considered the issues raised by Mr. Savoy during his CDP hearing and supplemental hearing when

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (26 U.S.C., "the Code"), as in effect at the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** issuing its supplemental notice of determination (we hold that it did); and

(2) whether Appeals abused its discretion in its final determination (a) <u>not</u> to

sustain the collection actions of the IRS to issue a notice of intent to levy to collect

Mr. Savoy's Federal income tax due for the 2007 tax year, but rather (b) to place

him in "currently not collectible" ("CNC") status for <u>all</u> years for which he

showed a balance due, and (c) <u>not</u> to file a notice of lien to preserve the

Government's interest as a creditor (we hold that it did not). Accordingly, we will

grant summary judgment for the Commissioner and will deny Mr. Savoy's cross-

motion.

## Background

There is no dispute as to the following facts:

<u>Petitioner's circumstances</u>

Mr. Savoy is recovering from a serious and sometimes disabling illness.

Despite his illness, he is often employed. From his assertions that he should be

allowed time to file or amend his Federal income tax returns for a period of years

evidently beginning in 2003, we assume that he was employed from 2003 through

at least 2012 and that he earned income in those years.

[*4] <u>Tax liability, notice of deficiency, and notice of proposed levy</u>

For the single year at issue in this case, 2007, Mr. Savoy was required to file a tax return by mid-April 2008 (i.e., more than 6 years ago), but he did not do so. The IRS therefore prepared a substitute for return ("SFR") pursuant to section 6020(b), issued a notice of deficiency to Mr. Savoy, and (when he did not file a petition pursuant to section 6213(a), challenging that determination) assessed the tax. Mr. Savoy alleges, and we assume for purposes of the Commissioner's motion, that he did not receive this notice. Thereafter, the IRS issued to Mr. Savoy a notice of proposed levy dated May 27, 2011.[2]

<u>Request for CDP hearing</u>

Mr. Savoy timely requested a CDP hearing before Appeals by submitting a Form 12153, "Request for a Collection Due Process or Equivalent Hearing", dated June 23, 2011 (i.e., more than three years ago). On that Form 12153 Mr. Savoy stated the relevant tax periods were the eight years 2003 through 2010. For the years 2003 through 2006, the IRS denied Mr. Savoy a CDP hearing because it

---

[2]Mr. Savoy alleges that the May 2011 notice of proposed levy was sent to the wrong address. However, he did receive the notice and did timely request his CDP hearing. He had apparently not filed a tax return for at least eight years (making it appear likely that the address had once been his address and that he had not notified the IRS of his new address), and he does not seem to contend that the address was not, for the IRS, his "last <u>known</u> address" (emphasis added) for purposes of section 6331(d)(2)(C).

**[*5]** concluded that the request was not timely as to those periods; for the years 2008 through 2010, the IRS denied him a CDP hearing because it concluded that no notice of proposed levy or notice of Federal tax lien had been issued to Mr. Savoy for those tax years. For the tax year 2007, however, the IRS acknowledged Mr. Savoy's CDP request as timely and proceeded with the CDP hearing.

Initial CDP hearing

It appears that Mr. Savoy made two principal contentions in the initial CDP hearing: First, Mr. Savoy attempted to dispute his tax liability for 2007 in that CDP hearing. In that connection he filed an amended 2007 tax return on September 7, 2011 (i.e., more than three years late, and more than 2½ years ago). Mr. Savoy asserts--and we assume in his favor--that the September 7, 2011, amended return for 2007 had "<u>copious</u> errors". Specifically, Mr. Savoy asserted in a letter to Appeals dated March 13, 2012:

> 3. TAX LIABILITY IS IN ERROR-- Because of the IRS's insensitivity to * * * [Mr. Savoy's medical condition] and related side effects, a wholly unrealistic schedule was imposed on the taxpayer, under duress of further Levy, and ten years of returns[3] were

---

[3]Mr. Savoy elsewhere complains that he should now be given more time to prepare the 10 years' tax returns. However, in light of his statement that the returns were "assembled" and "done", we infer that his point is that he needs to prepare <u>corrected</u> returns for those years. His returns for years other than 2007 are not at issue here, and as we explain below, the IRS has put him in CNC status and

(continued...)

[*6] assembled hastily, despite my on-going pleas for a relaxed schedule. * * * I managed to get the returns done, yet, because of the pressure, I omitted one of my larger daily deductions; my daily meals in the field as a freelancer.  That comprises a large number.  Many days I work 14 hours and take two meals within that work period. * * * Also, a single digit not carried over in math, resulted in the IRS incorrectly refilling [sic] my tax penalty in great error.  Because I copied the taxes from a worksheet into the archival forms, I merely entered the wrong digit in the 10,000 level of dollars.  If the IRS merely added my components of schedule A they would see that it equals not 12,000.  In other words, this is a cosmetic error, and if that 1 is changed to a 2, then all of the math adds up.

Thus, it is possible that corrections of errors might reduce Mr. Savoy's 2007 tax liability.[4]

Second, on his Form 12153, Mr. Savoy had checked the box indicating he desired to make an "Offer in Compromise" ("OIC").  By letter of February 6, 2012, Appeals scheduled a telephone CDP hearing for March 2, 2012.  The letter stated that "you must be in full compliance and submit financial information with a request for a face to face hearing", but it did not specify what full compliance might require (e.g., submission of returns for certain years), nor what the

---

[3](...continued) thus has effectively permitted him to take whatever time he wishes to file whatever he wishes.

[4]However, Mr. Savoy later volunteered in a motion for extension filed December 17, 2013, that "indeed, it's also possible that I owe the IRS much more money than incorrectly posted currently; we simply don't know--because of the hasty and forceful manner in which the returns were coerced."

**[\*7]** "financial information" was. Our record does not show all the communication that may have transpired between the parties, but on March 15, 2012, Appeals sent Mr. Savoy another letter that stated: "I never received the information from you". The record does not show that Mr. Savoy proposed an OIC on Form 656.

The Commissioner now acknowledges that "[i]t appears, based on the information in the administrative file that respondent's Office of Appeals failed to give proper weight to petitioner's illness in not allowing him sufficient time to prepare and file the delinquent returns to determine his correct liability for tax year 2007." Rather, at the premature conclusion of the initial CDP hearing, Appeals issued to Mr. Savoy a "Notice of Determination" that did <u>not</u> sustain the proposed levy; that determined Mr. Savoy should be put in CNC status; and that stated that "[a] Notice of Federal Tax Lien will be filed to protect the government's interest as a creditor."

Tax Court petition and remand

On May 15, 2012 (i.e., more than two years ago), Mr. Savoy timely filed his petition in this Court, alleging (among other things) errors in his assessed tax liability. The petition stated a Maryland address for Mr. Savoy. On March 27, 2013, the Commissioner moved to remand the case to Appeals. The

**[\*8]** Commissioner acknowledged that Mr. Savoy had not been given an adequate opportunity to challenge his underlying liability for 2007 at the CDP hearing and asked the Court to remand for a supplemental hearing. Mr. Savoy objected to the remand, but the Court --over Mr. Savoy's objection--remanded the case to Appeals for further consideration. Our order of March 28, 2013, stated:

> In particular--
>
> • If Mr. Savoy intends to show that his income tax liability for 2007 is less than the IRS has assessed, then he should present to Appeals the information proving his actual liability.
>
> • To the extent Mr. Savoy claims that he is entitled to deductions or credits that the IRS did not previously allow, he should document the pertinent expenditures and substantiate his entitlement to those deductions and credits.

Mr. Savoy moved for reconsideration on April 9, 2013; by our order dated April 17, 2013 (issued well over a year ago), we denied the motion for reconsideration and confirmed that the case would be remanded.

Supplemental CDP hearing

Appeals conducted a supplemental CDP hearing pursuant to our order. By letter of April 9, 2013, the Appeals officer stated to Mr. Savoy: "For me to consider alternative collection methods such as an installment agreement or offer

**[*9]** in compromise, * * * you must have filed all federal tax returns required to be filed." The letter named in particular the years 2011 and 2012 (for the latter of which the return was due April 15, 2013). The record does not show that Mr. Savoy ever submitted an OIC on Form 656 or otherwise proposed a specific collection alternative.

During the supplemental hearing, Mr. Savoy mailed the settlement officer a copy of a motion to vacate and motion for default judgment that he had filed with the Court. Attached to his motion to vacate was a copy of the original Appeals documentation in which he had contested the underlying liability. The settlement officer acknowledged receipt of these items and stated that she considered them before rendering her supplemental notice of determination on July 18, 2013. That supplemental notice of determination stated:

> Appeals has determined, based on verified financial information, that your tax accounts are currently not collectible. This does not mean that the liabilities are no longer owed. It means that we have determined that they are currently not collectible and no collection actions will be taken (except application of future refunds) unless or until we determine that collection should resume.

Like the original notice of determination, this supplemental notice determined <u>not</u> to sustain the levy against Mr. Savoy and put into CNC status <u>all</u> tax years showing a balance due and explicitly stated that the determination did not prevent

[*10] him from filing amended returns.  Unlike the original notice of determination, the supplemental notice did <u>not</u> assert that the IRS would file a notice of Federal tax lien to protect its interest as a creditor.

<u>Further Tax Court proceedings</u>

On September 13, 2013, the Commissioner filed a motion for summary judgment asking us to sustain the supplemental notice of determination, which, as to collection matters, is favorable to Mr. Savoy.  However, the supplemental determination does not reflect any adjustment to Mr. Savoy's 2007 income tax liability.  In his motion, the Commissioner states that, although Mr. Savoy challenged the correctness of the underlying tax liability during his CDP hearing, Mr. Savoy failed to provide documentation regarding his underlying liability during either the initial CDP hearing or the supplemental CDP hearing.  Mr. Savoy filed an objection on October 23, 2013, in which he asserted his desire to "present any effect it has all had on the accuracy of this Petitioner's tax liability as currently misperceived by the IRS".  Mr. Savoy also denied that he failed to participate in the supplemental hearing, implying that the documentation provided to Appeals should suffice to continue disputing his underlying liability.

However, we could not tell at the time of his objection whether Mr. Savoy had actually presented evidence that would substantiate the meals deductions he

**[*11]** claims were omitted from his return or any other adjustment affecting his liability, nor whether he had submitted evidence that would suggest an error in a potential tax penalty. We therefore issued our order of December 6, 2013, in which we--

> ORDERED that Mr. Savoy shall file, no later than January 6, 2014, a supplemental objection to the IRS's motion for summary judgment. In that supplement, he shall succinctly list each adjustment that should be made to his 2007 tax return that he believes will reduce his 2007 liability. (Presumably this list will include the meal deduction that he mentioned in his request for a CDP hearing, and it should include any other deduction or credit that he believes needs correction for 2007.) He shall also explain any challenge he has as to any penalty the IRS has asserted for 2007, and the basis for his challenge. To that supplement, he shall attach all of the documentary evidence that he would offer at trial to substantiate his entitlement to those adjustments affecting his underlying 2007 tax liability and penalty liability. * * *

That is, our order asked Mr. Savoy to list the adjustments and attach the documentation by January 6, 2014, a date that was--

- nine months after we ordered the remand and directed Mr. Savoy to "present to Appeals the information proving his actual liability" and to "document the pertinent expenditures and substantiate his entitlement to those deductions and credits";

- a year and a half after he filed his petition in this Court, challenging his underlying liability as assessed;

**[*12]** •   2½ years after he requested his CDP hearing, challenging his underlying liability as assessed; and

•   5½ years after the return was due.

On December 17, 2013, the Court received "Petitioner's Motion for Extension of Time". This motion did not explicitly state the date to which an extension was requested, but stated that Mr. Savoy would need six months to "assemble an archival 1040 form", and requested that he be given "six months * * * to reassemble the facts of his life into the form of an accurate 1040 form". The motion was construed as a request for a six-month extension of the Court's January 6, 2014, deadline (i.e., an extension to June 2014) to provide a list of his proposed adjustments with supporting documentation. We denied the requested extension by our order of December 20, 2013, because Mr. Savoy had already had 68 months to assemble the information but had not done so.[5]

---

[5]Our order denying Mr. Savoy the extension that he had requested stated: "The denial of Mr. Savoy's motion is, however, without prejudice to his requesting an extension if, by January 13, 2013, either (a) counsel who is admitted to practice in this Court files a notice of appearance on Mr. Savoy's behalf, or (b) an appropriate person files with the Court a Motion to Be Recognized as Next Friend" under Rule 60(d). Mr. Savoy's filing of January 3, 2014, seemed to indicate that he declined this suggestion, and since then there has not been any filing, on behalf of Mr. Savoy, of a notice of appearance or a motion to be recognized as next friend.

**[\*13]** On January 3, 2014, Mr. Savoy filed two motions with the Court:  a "Motion to Review and Make Determination" (which the Court treated as a motion for summary judgment) and a "Supplemental Objection" (which the Court treated as an objection to the Commissioner's motion for summary judgment).  In his supplemental objection, Mr. Savoy states that he has "no further supplemental information or material and <u>the previous Objection filed against the Motion for Summary Judgment still stands</u>" (emphasis in original).  Despite the Court's repeated and explicit orders to do so, Mr. Savoy has not provided (either to this Court or to Appeals) an amended Form 1040, "U.S. Individual Income Tax Return", for the tax year 2007, nor has he produced any information that would support his claim that his 2007 tax liability, as reported on the 2007 return as filed, was incorrect.

## Discussion

I.    General legal principles

    A.    Summary judgment standards

Where the pertinent facts are not in dispute, parties may move for summary judgment to expedite the litigation and avoid an unnecessary trial.  <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988).  Summary judgment may be granted where there is no genuine dispute as to any material fact, and a decision

**[\*14]** may be rendered as a matter of law. Rule 121(a) and (b); <u>Sundstrand Corp.</u> <u>v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994). The party moving for summary judgment bears the burden of showing that there is no genuine dispute as to any material fact, and factual inferences will be drawn in the manner most favorable to the partying opposing summary judgment. <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985). This case can be resolved on the basis of the undisputed facts.

   B.   <u>Standard of review</u>

Where the validity of the underlying tax liability is properly at issue, we review that matter de novo. <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 182 (2000).

The Court reviews for abuse of discretion the administrative determinations by the Commissioner's Appeals Office regarding nonliability issues. <u>Hoyle v.</u> <u>Commissioner</u>, 131 T.C. 197, 200 (2008); <u>Goza v. Commissioner</u>, 114 T.C. at 182. Because nonliability issues are before us, we review the determinations regarding those issues for abuse of discretion. In determining abuse of discretion, we consider whether the determination was arbitrary, capricious, or without sound basis in fact or law. <u>See, e.g.</u>, <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006); <u>Woodral v. Commissioner</u>, 112 T.C. 19,

**[*15]** 23 (1999). The Court does not conduct an independent review and substitute its own judgment for that of the settlement officer. Murphy v. Commissioner, 125 T.C. at 320. If the settlement officer follows all statutory and administrative guidelines and provides a reasoned, balanced decision, the Court will not re-weigh the equities. Thompson v. Commissioner, 140 T.C. 173, 179 (2013).

C.      Tax Court jurisdiction

This Court is a court of limited jurisdiction. It may therefore exercise jurisdiction only to the extent expressly provided by statute. Breman v. Commissioner, 66 T.C. 61, 66 (1976). In addition, jurisdiction must be shown affirmatively, and a party invoking our jurisdiction bears the burden of proving that we have jurisdiction over the party's case. Fehrs v. Commissioner, 65 T.C. 346, 348 (1975); Wheeler's Peachtree Pharmacy, Inc. v. Commissioner, 35 T.C. 177, 180 (1960). With respect to collection actions, this Court's jurisdiction under section 6330(d) depends on the issuance of a valid determination letter and the filing of a timely petition for review. Meyer v. Commissioner, 115 T.C. 417, 421 (2000); Offiler v. Commissioner, 114 T.C. 492, 498 (2000). Except as specifically provided by the Code, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person". Sec.

**[\*16]** 7421(a).  The Court's jurisdiction in levy actions brought pursuant to section 6330(d) is limited to determining whether Appeals' notice of determination should be sustained.  Therefore, to the extent that Mr. Savoy requests other relief, we cannot grant it.

        D.      Collection review procedure

Section 6330 generally provides that taxpayers are entitled to administrative and judicial review before the Commissioner may collect unpaid tax by way of a levy on the taxpayer's property.  Administrative review is carried out by requesting a CDP hearing with the IRS Office of Appeals.  If the taxpayer is dissatisfied with the outcome there, he may appeal that determination to the Tax Court.  Sec. 6330(b), (d).

The pertinent procedures for the administrative CDP hearing are set forth in section 6330(c).  First, the Appeals officer must obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(c)(1).  The record reflects that the settlement officer obtained proper verification during Mr. Savoy's initial and supplemental CDP hearing, and Mr. Savoy did not contest that verification during his CDP hearing or in his Tax Court petition.  Second, a taxpayer may raise any issue relevant to the unpaid tax or proposed collection action at the hearing, including challenges to the

[*17] appropriateness of the collection action and offers of collection alternatives (such as Mr. Savoy's suggestion of an OIC). Sec. 6330(c)(2)(A). Additionally, a taxpayer may contest the existence and amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B).

## II. Issues raised at the hearing

Mr. Savoy raised five "issues" in both his CDP hearing and Tax Court petition challenging the notice of determination:

### A. "Due diligence"

Mr. Savoy contends that "The first Levy"--i.e., evidently a notice of proposed levy for income tax for years prior to 2007--was issued without "due diligence" because it was sent to a wrong address, and that he was therefore deprived of the opportunity for a CDP hearing as to those prior years. However, Mr. Savoy has not petitioned this Court to review such a levy.

Contentions about a notice of proposed levy for years prior to 2007 are outside our jurisdiction in this case. See sec. 6330(d)(1); Freije v. Commissioner, 125 T.C. 14, 28 (2005) ("In exercising * * * jurisdiction [under section 6330(d)(1)], we do not determine whether any collection action with respect to the nondetermination year may proceed, but only whether collection action may

[*18] proceed in the determination year." (Emphasis added.)). Because the May 24, 2010, notice of determination and the July 18, 2013, supplemental notice of determination--the sole means by which this Court has jurisdiction--concern only the tax year 2007, we lack jurisdiction to consider levies concerning any tax years other than 2007.[6]

B.    "Civil Rights Violations"

Mr. Savoy contends at length and in detail that, in light of his medical condition, Appeals violated the Rehabilitation Act of 1973 ("Rehabilitation Act"), Pub. L. No. 93-112, secs. 500-504, 87 Stat. at 390-394 (codified as amended at 29 U.S.C. secs. 701-796 (2006)).[7] The chief alleged violation appears to be Appeals'

---

[6]To the extent that there might be any supposed connection between the IRS's proposed collection for 2007 at issue here and any proposed collection of "extra-jurisdictional liabilities", see Sullivan v. Commissioner, T.C. Memo. 2009-4, slip op. at 20, those other liabilities are effectively rendered moot since the supplemental notice of determination at issue here put into CNC status "all years showing a balance due".

[7]The Rehabilitation Act of 1973 ("Rehabilitation Act"), Pub. L. No. 93-112, sec. 504, 87 Stat. at 394 (codified as amended at 29 U.S.C. sec. 794(a) (2006)), reaches "any program or activity conducted by any Executive agency". Mr. Savoy also complains of violations of the Americans with Disabilities Act of 1990 ("ADA"), Pub. L. No. 101-336, 104 Stat. 327, but the ADA does not apply to Federal agencies. See Pitts v. Commissioner, T.C. Memo. 2010-101, slip op. at 22-23. However, the ADA's definition of "disability" has been explicitly incorporated into the Rehabilitation Act. For its definition, Rehabilitation Act sec. 504(a), 29 U.S.C. sec. 794(a), refers to "section 705" of 29 U.S.C.; and 29 U.S.C.

(continued...)

[*19] insistence that he file multiple returns in a short period of time.[8] To the extent Mr. Savoy seeks a determination that the IRS violated the Rehabilitation Act, we lack jurisdiction over that subject matter, which jurisdiction has instead been conferred on the District Courts.[9] The related issue we can decide is whether Appeals abused its discretion, either in its handling of the CDP hearing or in its determination, by refusing to make reasonable accommodations in favor of a disabled taxpayer--an issue implicated in three aspects of this case:

---

[7](...continued)
section 705(9)(B) provides: "The term 'disability' means * * * for purposes of * * * subchapter[] * * * V * * * of this chapter", the meaning given it in 42 U.S.C. section 12102 (2006). That incorporated definition of "disability" is from 42 U.S.C. section 12102 (2006), which is part of the codification of the ADA. The "disability" definition as it now appears in 42 U.S.C. section 12102 was substantially amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, sec. 4, 122 Stat. at 3555. Thus, the definition of "disability" as it appears in the Rehabilitation Act does, by means of its incorporation of 42 U.S.C. section 12102, reflect the definition of "disability" as enacted in the ADA and as amended in the ADA Amendments Act of 2008.

[8]The complaint pertains to IRS enforcement of "levy one" (i.e., the levy for pre-2007 taxes), but the IRS's motion to remand admits that similar demands were made in the 2007 CDP hearing.

[9]Even if the IRS violated the Rehabilitation Act, a point which the Commissioner denies and which the Court does not address, the proper remedy for Mr. Savoy is provided in 31 C.F.R. part 17 (2013) and does not involve the Tax Court. If a disabled person is dissatisfied with a final agency decision under the Rehabilitation Act, he may file an appeal with the appropriate Federal District Court. See 29 U.S.C. sec. 794(a); 42 U.S.C. secs. 2000d through 2000d-7 (2006).

**[\*20]**       1.       <u>Opportunity to challenge the 2007 liability</u>

The IRS conceded that Appeals did abuse its discretion at the initial CDP hearing by insufficiently taking Mr. Savoy's disability into account in setting the deadline for his submission of information challenging his underlying liability for 2007 (i.e., an amended 2007 return and supporting documentation). In light of that concession, we ordered a remand so that Mr. Savoy could have his due opportunity to challenge that liability. He contends that the remand was inadequate, and we discuss that contention in part II.C below under his third issue ("Tax Liability is in Error").

2.       <u>Non-acceptance of OIC</u>

On his request for a CDP hearing, Mr. Savoy indicated an interest in an OIC; and he has sometimes seemed to contend that Appeals abused its discretion by insisting in April 2013 that he file his 2011 and 2012 returns as a prerequisite to its considering an OIC. However, Mr. Savoy never actually submitted an OIC or proposed any other collection alternative, and he has focused instead on challenging his underlying liability for 2007. By definition, Appeals cannot abuse its discretion by failing to accept a collection alternative that the taxpayer never proposed. See <u>Reed v. Commissioner</u>, 141 T.C. 248, 254 (2013) ("A taxpayer must propose an OIC for it to be considered during the

**[\*21]** collection hearing."); see also Godwin v. Commissioner, T.C. Memo. 2003-289 ("Taxpayers who wish to propose an offer in compromise must submit a Form 656, Offer in Compromise, which requests financial information from the taxpayer so that the IRS can determine whether the offer should be accepted"), aff'd, 132 Fed. Appx. 785 (11th Cir. 2005).

3. Collection activity

To the extent Mr. Savoy still contends that, in its supplemental notice of determination, Appeals abused its discretion by its decisions with respect to collection activity, that contention must be rejected. Appeals did not sustain the notice of levy that prompted this proceeding; and Appeals did not propose even the filing of a notice of lien. Rather, Appeals determined to grant Mr. Savoy CNC status for all tax years showing a balance due. Consequently, he may make payments on whatever schedule he is able, and the IRS will not proceed with involuntary collection. Certainly, Appeals did not abuse its discretion in determining not to sustain collection actions and instead to place Mr. Savoy in CNC status for all tax years showing a balance due. CNC status grants Mr. Savoy relief from all collection activity and thus by definition accommodates his disability to the maximum extent possible. Such a determination gives Mr. Savoy an indefinite time within which to assemble the necessary documentation and file

[*22] amended returns for any tax period as to which he believes his assessed liability is excessive. Moreover, he can submit an OIC or other collection alternative if he wishes to do so.

C. "Tax Liability is in Error"

Mr. Savoy contends that the tax assessed for several years (including 2007), on the basis of his self-prepared returns, was in error because of the haste with which he was required to prepare his returns. Since the issue of his 2007 liability was not resolved on remand, it is now the subject of our review.

The Court considers an underlying tax liability on review only if the taxpayer properly raised the issue during the CDP hearing. 26 C.F.R. secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see also Giamelli v. Commissioner, 129 T.C. 107, 115 (2007). A taxpayer does not properly raise the issue of an underlying tax liability if he requests consideration but "fails to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to present such evidence." See 26 C.F.R. sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

We assume in his favor that Mr. Savoy might need as long as six months to assemble the information described in our order of December 6, 2013. However, since April 2008 when his original return was due, he has had more than six years

**[*23]** to assemble the information but evidently he has not done so. He should have assembled the information before the conclusion of his initial CDP hearing in April 2012 (more than two years ago), but evidently he did not do so. Failing that, he should have assembled the information in response to our explicit remand order in March 2013, but he evidently did not do so. Even considering only that latest instance, he had not just six months to do so, but nine months from the time of our remand order until the deadline of January 6, 2014, but evidently he did not do so. Moreover, even at this late date, Mr. Savoy admits he does not even know whether the amount assessed against him is too great <u>or too small</u>. For all Mr. Savoy knows, he owes <u>more</u> than the IRS has assessed.

Mr. Savoy's motion for an extension might have been understandable had our order of December 6, 2013, been a first call for this information, but it was not. It was instead our attempt to give Mr. Savoy one last chance to present information that he had been obligated to assemble previously, on multiple occasions. Mr. Savoy missed the Court's January 6, 2014, deadline to file his supplemental objection to the Commissioner's motion for summary judgment.

Mr. Savoy has failed to present to this Court any evidence supporting a challenge to the underlying liability. Taking into account his disability, he has certainly been afforded a "reasonable opportunity" to provide evidence disputing

[*24] the tax liability, see 26 C.F.R. sec. 301.6330-1(f)(2), Q&A-F3, but has not done so.  We therefore find that Mr. Savoy did not properly challenge the existence or amount of the underlying tax liability for 2007.

D.    "Currently Uncollectible"

Mr. Savoy agrees with Appeals' decision that he should have CNC status and its decision not to sustain the proposed levy, but he disputes the appropriateness of the filing of a notice of lien, which was foretold in the explanation attached to Appeals' initial notice of determination.  However, unlike the initial notice of determination issued April 18, 2012, Appeals' supplemental notice of determination did not state that the IRS would file a notice of lien.  (The record contains no evidence that the IRS has filed a notice of Federal tax lien; and Mr. Savoy's petition does not concern such a notice.  If the IRS does file a notice of lien, Mr. Savoy will be entitled to a hearing on that filing, pursuant to section 6320(b).)  Accordingly, any contention in this case against the appropriateness of the filing of a notice of lien is moot.

E.    "Full Life Assay"

Mr. Savoy contends that an evaluation of the accomplishments of his entire life will show that over the years he has contributed great value to our country and has taken action that saved the Government much money.  He apparently suggests

**[\*25]** that this should be taken into account in deciding whether the IRS should be permitted to collect tax that he owes.  That is, he asks us to make a plenary review of his contributions (monetary and otherwise) as against his liabilities in general.

Mr. Savoy's request for a "Full Life Assay" will not be granted.  We have jurisdiction only to review the IRS's proposed collection as to 2007 (not to review his liabilities for his whole life).  While our review can and does take account of amounts he has paid in money, Mr. Savoy cannot satisfy his tax obligations with intangible contributions or supposed savings that he has facilitated for the Government, so we will not attempt to assign values to those non-payments.

III.    Conclusion

The record demonstrates no abuse of discretion by Appeals in issuing its supplemental notice of determination <u>not</u> to sustain the proposed levy but instead to put Mr. Savoy in CNC status.  As required by section 6330(c)(3)(C), the settlement officer evaluated the proposed collection action (here, the proposed levy) by balancing the need for efficient collection of taxes with Mr. Savoy's concerns that such action be no more intrusive than necessary, especially in light of his medical condition, and determined <u>not</u> to proceed with collection but instead to put Mr. Savoy into CNC status.  Few determinations could be as beneficial to Mr. Savoy.  Though he continues to owe a tax liability (which accrues interest),

[*26] Mr. Savoy is free from the pressures of a pending levy or notice of lien when preparing amended returns or proposing a collection alternative (if he decides to do so). We cannot find any abuse of discretion in the settlement officer's supplemental notice of determination, and we therefore sustain it. As to the other issues Mr. Savoy raises, the Court lacks jurisdiction to grant the relief Mr. Savoy seeks. To give effect to this opinion,

<u>An appropriate order and decision will be entered for respondent</u>.